**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JAMES AND RACHEL DRAIN,

        Plaintiffs,

v.                                     CIV 04-399 MV/KBM

WELLS FARGO BANK, MINNESOTA, NA, et al.,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

As an initial matter, I need to address the procedural posture of this case before addressing the pending motions.  On October 4, 2005, Plaintiffs filed a Notice of Appeal to the Tenth Circuit seeking reversal of my August 31, 2005 discovery rulings.  *See Docs. 207 & 213.*  Plaintiffs also then filed a motion addressed to the presiding judge to stay my rulings. Since that time, however, the Tenth Circuit dismissed the appeal for lack of appellate jurisdiction.  *See Doc. 219* (Order entered October 27, 2005).  Thus, the motion to stay now appears moot, and I feel confident I have the requisite authority to now issue my  recommended findings and disposition to Chief District Judge Vázquez.

On August 11, 2005, I held a hearing on numerous pending motions.  *See Transcript*, filed November 18, 2005.  Present at the hearing were Plaintiffs James and Rachel Drain and their attorney Gany Mike Bello, Dylan O'Reilly and Kelsey Green for Defendant Wells Fargo and Fairbanks Capital, and William Davis and Cynthia Tessman for Defendant Accredited Home Lenders.  Specifically, the parties were given notice that I would hear the following motions seeking sanctions that were  previously taken under advisement:  Defendant Fairbanks' motions

seeking attorney fees *(Docs. 86 & 87)*, a motion to strike pleadings filed by Defendants Fairbanks and Wells Fargo *(Doc. 117)*, and Defendant AHL's motion for order to show cause and contempt *(Doc. 131)*.

Plaintiffs maintain that "they were ambushed, prejudiced and wrongfully surprised" because "their appearance was noticed for a hearing on only a Motion to compel disclosure of their Medical Record. . . ." *See Doc. 208* at 3.  To the contrary, the notice specifically provided:

> A hearing on **motions requesting sanctions (Doc. 86, 87, 117 & 131)** has been set in the above matter on MONDAY, JULY 25, 2005, at 9:00 a.m. at the United States Courthouse, 200 E. Griggs Ave., Third Floor, Courtroom Two, Las Cruces, New Mexico.  As ordered in the Proposed Findings and Recommended Disposition and Order on Certain Pending Motions filed on June 17, 2005 by Magistrate Judge Karen B. Molzen, **"Plaintiffs as well as their counsel and all defense counsel are ordered to appear in person and show cause why sanctions, including possible dismissal of the action, should not be imposed pursuant to FED. R. CIV. P. 11 & 37 and 28 U.S.C. § 1927."**

*See Doc. 181* (emphasis added); *see also Doc. 189* (resetting hearing for August 11, 2005). Thus, Plaintiff were given adequate notice that the imposition of sanctions was under consideration.

Moreover, two additional motions filed by Defendants Fairbanks and Wells Fargo *(Doc. 152)* and by Defendant AHL *(Doc. 175)* seeking dismissal as a sanction became ready for ruling prior to the hearing.  *See* Notices of Completion, *Docs. 192 & 198*.  Therefore, I also permitted evidence to be received and heard argument on those motions at the hearing.  Plaintiffs were given an opportunity to file a response by August 26, 2005 to certain envelopes which were admitted into evidence.  Plaintiffs' "Objections and Responses" were filed August 31, 2005. *Doc. 208.*

Insofar as Plaintiffs in their "Objections and Responses" renew their motion that I recuse, it will yet again be denied. I reject Plaintiffs' continuing, unfounded assertions of judicial bias and the alleged "use of the [Magistrate Judge] office as an extension of ones [sic] personal effects." *Doc. 208* at 2. At the hearing in response to Plaintiffs' Motion to Recuse *(Doc. 203)* and in a previous Order *(Doc. 186)*, I answered Plaintiffs' attacks with my belief that

> I have simply correctly applied the applicable law to the facts, and I have provided the parties with my rationale and citations to authorities upon which I have relied. As the Tenth Circuit noted, "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir.1992). . . . I will not repeat the other bald and unsubstantiated accusations leveled against me, the defendants' attorneys and the presiding judge. I will simply reply that I find them to be lacking in a factual predicate. . . . "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is. **A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation."** *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted).

*Doc. 194* at 2-4. Thus, although it is tempting to pass along this most trying case to another judge, I respectfully refuse to recuse.

## Proposed Findings of Fact

Pursuant to Chief Judge Vázquez' Order of Referral under 28 U.S.C. § 636(b)(1)(B), I make the following proposed findings of fact as to Plaintiffs' and their counsel's conduct based upon the court record[1] and the evidence received at the hearing.

---

[1] Plaintiffs have objected to judicial notice of our court's record in the *Wheeler* case, and they maintain that information gleaned from the *Wheeler* court file constitutes "extra-judicial" information. Admittedly there can be potential problems in taking judicial notice of court records, and "[f]actual findings in one case ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003).

3

### *Failure to Provide Discovery*

**Initial Rule 16 Disclosures.**   At the hearing held December 14, 2004, I ordered Plaintiffs

who had not yet made timely initial disclosures to do so by December 22, 2004.  *Doc. 61.*  I

specifically directed Mr. Bello that because Plaintiffs sought damages for emotional injuries, he

was to provide Defendants by that same date with HIPPA-compliant releases pursuant to

D.N.M.LR-Civ. 26.3(d).  *Id.*

Although Mr. Bello certified that he had timely mailed the required disclosures,

Defendants were forced to file motions to compel because, in fact, Plaintiffs had not provided the

information and releases mandated by D.N.M.LR-Civ. 26.3(d).  *See Docs. 60 & 73.*  On March 2,

2005, I granted Defendant AHL's motion to compel and ordered that

> (1) . . . .  Plaintiff shall immediately and fully provide Defendant
> AHL with the medical information, medical records and HIPA-
> compliant form medical release as required by D.N.M.LR-CIV. 26.3
> to support the claims pertaining to Plaintiffs' alleged emotional
> injuries; (2) The Court will take under advisement Defendant
> AHL's request for attorney fees.  If Plaintiffs do not provide the
> disclosures identified above by March 16, 2005, the Court will issue
> an order to show cause why the request for attorney fees should not
> be granted, and to explore whether further sanctions, including

---

However, "courts should distinguish between taking judicial notice of the truth of some
extrajudicial fact recited in a court record and the use of those facts for some purpose that does
not depend on the truth of the facts recited."  21 Charles Alan Wright & Kenneth A. Graham, Jr.,
*Federal Practice & Procedure* § 5106 (Supp. 2001).  In the action at bar, I have taken judicial
notice of the *Wheeler* pleadings, opinions and orders not for the truth of the propositions
contained therein.  Rather, I have used them to demonstrate a similar obstructionist course of
conduct by Plaintiff's counsel and to ascertain that his conduct here is not the result of
inexperience, accident or other innocent reason.  Further, the *Wheeler* court records establish that
Mr. Bello had prior "notice" that failure to comply with D.N.M.LR-CIV. 26.3(d) in a case with
similar claims could result in the imposition of sanctions including dismissal of the action.  I
believe that for this purpose, "[a] court may take judicial notice of related proceedings and
records in cases before the same court."  *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580,
587 (5th Cir. 1985).

possible dismissal of the action, are required to assure compliance
with the rules and orders of this district court. *See Ehrenhaus v.
Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992); and  (3) Plaintiffs'
counsel shall file a certification that he delivered a copy of this
Memorandum Opinion and Order to his clients and fully discussed
with them the issues addressed herein, especially the possibility of
sanctions including dismissal with prejudice if they knowingly and
willfully fail to comply with the orders of the Court and its rules.

*Doc. 81* at 5.  Plaintiffs filed objections to the above discovery ruling as contemplated by 28

U.S.C. § 636(b)(1)(A),[6] but did not seek a stay of my ruling.[7]  Instead, on the day the disclosures

were due under my order, Plaintiffs filed a motion for protective order requesting that the

---

[6]       A magistrate judge to whom a pretrial matter not dispositive of a
claim or defense of a party is referred to hear and determine shall
promptly conduct such proceedings as are required and when
appropriate enter into the record a written order setting forth the
disposition of the matter. Within 10 days after being served with a
copy of the magistrate judge's order, a party may serve and file
objections to the order; a party may not thereafter assign as error a
defect in the magistrate judge's order to which objection was not
timely made. The district judge to whom the case is assigned shall
consider such objections and shall modify or set aside any portion
of the magistrate judge's order found to be clearly erroneous or
contrary to law.

FED. R. CIV. P. 72(a).

[7]  In the *Wheeler* case, Chief Magistrate Judge Garcia was faced with the same situation:

Subsequent to the Court's issuance of its Memorandum Opinion
and Order directing compliance with discovery obligations and
imposing sanctions, Wheeler timely filed objections to the
magistrate's order [Doc. 36]. Wheeler's objections are pending
before the Honorable William P. Johnson, the trial judge. However,
Wheeler did not obtain a stay of the magistrate's order. *The filing
of objections does not serve to stay the effect of the Court's order.*

*Wheeler v. American Heritage Bank*, CIV 04-271 WJ/LFG , *Doc. 49* at 2-3 (D.N.M. October 6,
2004) (citations omitted) (emphasis added).

March 2, 2005 order be vacated.  On July 29, 2005, Chief Judge Vázquez denied the motion for protective order.  *See Doc. 196-97.*

Despite these rulings against them, Plaintiffs have willfully failed to provide the medical information and releases to the Defendants.  At the August 11, 2005 hearing, Mr. Bello stated that

> now that the Court has – I mean, the Chief Vázquez has made the final ruling on it that is specific to the claim rather than the broad medical history of my clients for the past five years are specific to their claim that those – that she — that the Court finds that those medical information that we have should be provided, and we will produce those.

*Transcript* at 44.  Yet within a minute, Mr. Bello proclaimed that in response to Chief Judge Vázquez' order, that "there is no medical information that we have that we are withholding," *id.* at 45, and that "[w]hatever [Plaintiffs] have concerning how they deal with stress will be used -- or that may be used as evidences towards their emotional claim, we will produce ***those*** records," *id.* at 48 (emphasis added).

In essence, Mr. Bello suggested that Plaintiffs would consider providing limited information and releases for what he deemed qualified as relevant.  In short, this "offer" is far too little, far too late and provides no real assurance that the necessary mandated disclosures would be forthcoming without delay.  Indeed, in Plaintiffs' most recently filed Objections and Responses, Plaintiffs seem to rely on the pending appeal on the same issue in the *Wheeler* case[8] as insulating them from sanctions for non-compliance with D.N.M.LR-Civ. 26.3(d) in this action.  *See Doc. 208* at 3.

---

[8] *Wheeler v. American Heritage Bank* (No. 04-2251 in the Tenth Circuit).

**Other Written Discovery Requests.**  Plaintiffs also failed to serve complete and timely responses to Defendants' discovery requests, including interrogatories, requests for production and requests for admissions.  The docket sheet reflects that Defendants had to file motions to compel virtually every discovery request.  Yet Plaintiffs failed to file timely responses in opposition to the vast majority of the motions to compel, *see Doc. 207*, which failure "constitutes consent to grant the motion" under D.N.M.LR-Civ. 7(b).  In granting Defendants' motions to compel, I expressly found that Plaintiffs waived any objection to fully and completely answering or responding to the discovery requests and ordered prompt service of full responses without objections.  Plaintiffs have failed to so comply.  *See Transcript* at 51-55.

**Failure to Appear for Depositions.**  Defense counsel had been diligently trying to work with Mr. Bello over a two-month period to find an acceptable date to depose the Drains, but to no avail.  *See Doc. 153.*  With the discovery deadline looming, and having heard no response from Mr. Bello to requests for available dates, Defendants noticed Plaintiffs' depositions for May 26 and 27, 2005.  Mr. Bello then  informed defense counsel that those dates were "in conflict" with his schedule.  Mr. Bello advised, however, that "the week of May 30, 2005 thru June 2, 2005 is available and could be worked out on further consultation for a definite confirmation."  *Doc. 153*, Exh. 6.  Therefore, Defendants amended their deposition notices for June 1 and 2, 2005.  *Id.* at Exh. 7-10.[9]

A certified mail return receipt indicates that the amended deposition notices were received

---

[9]  To make it easier for both Plaintiffs and their attorney, Defendants noticed the depositions for Clovis even though they could have insisted that the depositions take place in Albuquerque.  *Id.*

by Michael Morales on May 17, 2005, and Mr. Bello acknowledges that Mr. Morales is authorized to accept mail on his behalf.  *See id.* at Exh. 8; *Transcript* at 115.  Yet, ten days after receiving the notice of depositions, Mr. Bello faxed a letter stating that he had not received word about the final scheduling of the depositions, and that his clients were no longer available for deposition on those dates that he had previously provided to defendants' attorneys.  Plaintiffs did not seek a protective order nor did they file a notice of nonappearance.  Although the depositions were clearly noticed in a timely manner, Plaintiffs failed to appear for their depositions.  *See Doc. 152 & 175.*

Mr. Bello apparently contends that his clients were not obligated to appear on the dates set forth in the amended notices because these dates were not "confirmed" in his mind. *Transcript* at 119-20.  Clearly, however, the amended notices served to finalize the dates defense counsel had already indicated he was planning to use.  *See Doc. 153*, Exh. 7.  Plaintiffs further complain of certain conduct of defendants' attorneys in association with those deposition attempts:

> when defense counsel was in Clovis for depositions of Plaintiffs and neither Mr. Bello nor his clients appeared at those depositions, defense counsel decided to hand deliver documents to Mr. Bello's office address.  Defense counsel went to the street address Mr. Bello had claimed to be his [Clovis] office's street address, but discovered it was a private mailbox facility and not Mr. Bello's office. Defense counsel inquired about leaving a package for Mr. Bello and then did so.

*Doc. 11* at 5.  Mr. Bello contends that this visit to his Clovis address constitutes "unethical and unlawful action."  *See Doc. 208* at 7.  To the contrary, hand-delivering a package to an opposing counsel's listed address is not only permissible but commonplace, and it provides counsel with the

ability to request a receipt when mailing dates are at issue.

### Conduct of Mr. Bello

**Erroneous Certification Dates.**  The exhibits offered and admitted at the hearing include numerous examples of what appear to be inaccurate mailing certifications by Mr. Bello.[10]  *See Exhs. A-O.*  The salient information from the exhibits received at the hearing is set forth in the chart below:

| Exh? | Title of enclosed document | Certification | Postmark | |
|------|----------------------------|---------------|----------|---|
| A | Plaintiff's Responses and Objections to Defendant Basmajian T. Doyle Motion to Dismiss | 11/04/04 | 11/09/04 | 5 |
| B | Plaintiff's Motion to Set Aside Entry of Default on Defendants' Counterclaim | 12/01/04 | 12/07/04 | 6 |
| C | P's Motion to Vacate or Reconsider Decision Granting in Part Basmajian's M to Dismiss | 01/24/05 | 01/25/05 | 2 |
| D | P's Response & Obj'ns to AHL's Motion to Compel Medical History Disclosures | 01/27/05 | 01/28/05 | 1 |
| E | P's Reply on Motion to Vacate or to Reconsider Order | 02/24/05 | 02/26/05 | 2 |
| F | P's Obj'ns to Judge Molzen's Recommended Finding as to P's M to Set Aside Default | 06/27/05 | 07/05/05 | 8 |
| G | P's Request for Disclosure under U.S.C. § 455 to Judge Molzen & to the Court | 06/29/05 | 07/07/05 | 8 |
| H | P's Certification of Completion of Task and Presentation of Order | 07/01/05 | 07/08/05 | 7 |
| I | Same as Exhibit C  (received by Def. AHL) | 01/24/05 | 01/25/05 | 1 |
| J | P's Second Set of Interrogatories to Defendants Wells Fargo & Fairbanks | 02/24/05 | 03/??/05 | 4 |
| K | P's Response & Obj'ns to AHL's M to Require Only Written Communication | 03/11/05 | 03/15/05 | 4 |
| L | P's Motion for Protective Order | 03/14/05 | 03/16/05 | 2 |
| M | P's Obj'ns to Judge Molzen Opinion and Order Granting Motion to Compel | 03/09/05 | 03/14/05 | 5 |
| N | P's Answers & Obj'ns to Defendants Wells Fargo and Fairbanks Counterclaim | 12/01/04 | 12/07/04 | 6 |
| O | P's Response & Obj'ns to AHL's M to Dismiss, or in alternative, M for More Def Stmt | 08/09/04 | 08/13/04 | 4 |

---

[10]  Mr. Bello protests that he was "ambushed" by these exhibits.  To make sure that he had sufficient time to examine the exhibits and offer any objections,  I allowed Plaintiffs to file written objections to the envelope/certification testimony and evidence after its receipt at the hearing, and they have done so.  *See Doc. 208.*

As seen from the chart, the postmarks on these exhibits reflect that Plaintiffs' actual mailing dates were days after the indicated mailing date set forth in the certifications.  Mr. Bello maintains that these discrepancies amount to no big deal, and as to those which show just a one or two day delay in the postmark, I agree.  *See Exhs. C, D, I & L.*  Interoffice procedures, such as placing the document in a secretary's in-box could explain such a short delay.  But when the postmark date differs from the certification date by ***four to eight days***, the delay in mailing significantly reduces the amount of time available for Defendants to file timely responses.  *See Exhs. A, B, E, F, G, H, J, K, M, N & O.*

Mr. Bello protests that there are no assurances that Defendants have accurately kept track of which documents were sent in each envelope and when they were actually mailed or received.  However, Defendants' counsel testified as to her instructions to her office staff regarding such correspondence, and Plaintiffs offered no proof to the contrary.  Plaintiffs then condemn opposing counsels' decisions to closely monitor the receipt of correspondence and to retain envelopes in which Plaintiffs had mailed documents.  Plaintiffs attach some sort of sinister motive for doing so and allege "bad faith."  *See Doc. 208* at 4; *Transcript* at 101-05.  Plaintiffs further declare that the documents and authenticating testimony were "bogus, deliberately orchestrated to deliver injustice and to obtain an unlawful sanction," and "unethical maneuvers of process."  *Doc. 208* at 6.

Other than pure speculation, however, Plaintiffs failed to refute the testimony.  The authenticating witnesses were subject to cross-examination at the hearing.  Moreover, Mr. Bello was given the opportunity, if he wished, to take the stand and testify regarding his office's mailing practices and certification procedure.  He declined.  Instead, Mr. Bello has now filed two

affidavits "in rebuttal."  *See Exhibits to Doc. 208*.

In one affidavit, Mike Moralez states that he is an "independent contractor and owner of the Pack & Mail business in Clovis" and that he is "in the business of shipping, receiving and packaging and maintaining [illegible] for individuals and businesses, including several law offices and attorneys here in Clovis."  *Doc. 208* at Exh. B.  Moralez further testifies that he handles Mr. Bello's mailings, but Moralez gives absolutely no information regarding how such mail is handled. In fact, the affidavit is devoid of any explanation for the discrepancies between the postmark and certification dates.  It appears that Plaintiffs offer the Moralez Affidavit solely to protest opposing counsel's alleged "deceptive" and "unethical" visit to Mr. Bello's mailing address of record in Clovis.  As discussed above, these arguments are without merit.

Plaintiffs declare that Mr. Bello's affidavit "states that all the documents he served were delivered to the mail and or put in the mail on the dates stated on the certificate of service." *Doc. 208* at 7.  Mr. Bello's affidavit says no such thing – it is, in fact, a truly empty affidavit.  Mr. Bello testifies only that he is "the attorney for Appellant [sic]," that he is "of sound mind and above the age of 21 years old," and that those statements are "true and correct to my knowledge" and that they were "made for the purpose of justice and not for delay."  *Doc. 208* at Exh. A.

In short, Mr. Bello's affidavit provides absolutely no material information on the issue at hand.  His misrepresentation of the contents of his affidavit again demonstrates Mr. Bello's lack of candor with the Court in these proceedings.

Insofar as Plaintiffs attempt to attack the purported contents of Defendants' exhibits, I find those objections to be without merit.  *See Doc.208* at 5-6.  Defendants laid a proper foundation for their introduction, and the exhibits were properly authenticated.  Plaintiffs merely

speculate that the envelopes might have contained documents other than those indicated by Defendants.  Having heard sworn testimony as to each envelope's contents, and I find it to be credible.

As to the alleged incorrect certifications, I will assume that the discrepancy in dates as to Exhibit O, which shows an incorrect zip code for defense counsel, could be explained if the envelope contained a second complimentary copy at counsel's request.  However, contrary to Mr. Bello's other assertions: (1) Exh. J's postmark is not totally unreadable – although the day of mailing is obscured, "the month of "March" clearly appears; (2) the postmark on Exhibit K is March 15, 2005 and not March 5; and (3) his hypothesized explanations as to discrepancies found in Exhibits L-N were flatly contradicted by the testimony of defense counsel.

Thus, I find that the exhibits are substantially what Defendants purport them to be.  Based upon those admitted exhibits and the received testimony, I further find that they establish a pattern and practice by Mr. Bello of falsely certifying the actual date of mailing.

**Other Alleged Misrepresentations.**  Defendants contend that Plaintiffs' pleadings are laden with "unjustified legal contentions" that "ignore unfavorable precedent" and "show a lack of familiarity with the law."  *Doc. 117* at 2-7 (referring to numerous citations within Plaintiffs' briefing).  Indeed, even a cursory review indicates support for that proposition.[11]

**Blatant Disregard of Court Orders.**  Early in the litigation Defendants alerted the Court of discrepancies in the postmark date and certification of service date of Plaintiffs' pleadings.  In order to avoid what I saw as a rapidly deteriorating situation, at the initial Rule 16 hearing held

---

[11]  Rather than go into great detail here, I have scrutinized the examples mentioned in Defendant Wells Fargo's brief and find that Defendants have accurately portrayed the holdings of the cases and how they differ from the propositions for which Plaintiffs have cited them.  *See id.*

December 14, 2004, I ordered counsel "in this case only, to make service of all pleadings by certified mail." *See Doc. 54*.  I wanted a reliable record of when and how service was accomplished.

But Plaintiffs ignored my attempt to protect them from any further accusations of incorrect certification dates.  If Mr. Bello had used certified mail as I had ordered, there would be independent proof of all mailing dates.  By failing to follow this directive, Plaintiffs reintroduced the issue of false certifications which has necessarily diverted the attention of the court to collateral matters unrelated to the merits of this action.  Plaintiffs have thereby obstructed the speedy and orderly processing of this case.

Although of lesser importance, Plaintiffs have failed to appear in a timely manner.  On December 14, 2004, Mr. Bello arrived almost forty-five minutes late for the Initial Rule 16 Hearing.  *See Doc. 54*.  He indicated that he had thought the hearing would be telephonic although the notice clearly indicated it would be held at the courthouse in Las Cruces.  *See Docs. 29 & 30*.  Just one month later, Mr. Bello and his clients arrived more than an hour and fifteen minutes late for a settlement conference in Las Cruces on January 18, 2005.  *See Docs. 56 & 61*.  At that time, I cautioned Plaintiffs and their attorney that further failures to strictly abide by court orders could result in the imposition of sanctions.  *Doc. 61*.

**Frivolous Arguments.**  Twice Plaintiffs unsuccessfully asked the Clerk of Court to enter default against Defendant Basmajian Thomas Doyle.  *See Docs. 31 & 43*.  However, Plaintiffs had not properly served Defendant Doyle, and eventually the claims against him individually were dismissed without prejudice.  *See Doc. 59*.

Plaintiffs then filed a Petition for Writ of Mandamus in the Tenth Circuit seeking an order

directing the district court to enter such a default judgment. The Tenth Circuit panel denied the writ on April 5, 2005. *See Docs. 128.* Plaintiffs now argue that their application for a writ was not frivolous because they "have reserved their right on the issue for further review on timing." *Doc. 123* at 2. The Tenth Circuit Order, however, specifically notes that the petition for writ was denied "[b]ecause the Drains can appeal the district court's failure to enter a default judgment after final judgment in the case. . . ." *Doc. 128.*

Similarly the Tenth Circuit found Plaintiffs' notice of appeal regarding my discovery rulings lacked any basis for appellate jurisdiction. *See Doc. 213* (notice of appeal) and *Doc. 219* (10th Circuit's November 3, 2005 dismissal of appeal). It is manifestly clear that because the discovery order is not a final decision of the District Court, it falls outside the jurisdiction of the appellate court. *See Howard v. Mail-Well Envelope Co.*, 90 F.3d 433, 435-36 (10th Cir. 1996) (a "final decision" ends the litigation on the merits and leaves nothing more for the court to do but execute judgment).

In fact, Mr. Bello was made cognizant of the frivolous nature of the notice of appeal when he filed the same pleading in the earlier *Wheeler* case. After detailing why the notice of appeal was defective and ineffective to invoke appellate jurisdiction, Magistrate Judge Garcia proceeded with the requisite notice to a show cause hearing *See* CIV 04-271 WJ/LFG, *Doc. 44.* Following this hearing at which neither Wheeler nor Mr. Bello attended, Judge Garcia performed the *Ehrenhaus* analysis and recommended that the case be dismissed with prejudice as a discovery sanction. *Doc. 49.* District Judge Johnson adopted that recommendation. *See* CIV 04-271 WJ/LFG, *Doc. 53.*

**Unsupported Inflammatory Allegations**. Plaintiffs' pleadings have grown more and

more venomous against the opposing parties and their counsel.[12]  Very early on it became

apparent that Mr. Bello was making accusations of unprofessional conduct by opposing counsel.

Reluctantly, I ordered the parties to communicate only in writing.  As I noted,

> Defendants assert that "telephonic and in-person conversations with
> counsel for the plaintiffs have become increasingly drawn-out and
> non-productive."  *Doc. 75* at 1.  Indeed, in my limited interactions
> with counsel, Plaintiff's attorney seems to feel that even
> housekeeping matters require a detailed discussion of the merits of
> his clients' claims.  Finally, I agree with Defendants that "[h]aving
> all communication between opposing counsel will alleviate
> questions concerning misrepresentations or unprofessionalism, and
> will help to eliminate any requests to the court to referee any such
> disputes or hold evidentiary hearings in this regard."  *Id.* at 2.

*Doc. 88* at 2.  Plaintiffs insisted that an order requiring only written communications would be

counterproductive and slow down the litigation process.  After conducting the hearing, I am even

more convinced that the written communication order was indeed necessary and that it eliminated

some of the controversy as to past events.  I have never felt compelled to make such an order

before, and I hope never to do so again in the future.

Mr. Bello's unfounded claims of bias and unfair treatment by both the presiding judge and

---

[12]  As Chief Magistrate Judge Garcia noted early in the *Wheeler* case,

> the Court requested cooperation between counsel and noted that
> the accusations, castigations and demand for sanctions that have
> now twice been submitted to the Court are improper, do not
> constitute effective advocacy, and tend to interfere with the
> cooperative spirit which should be fostered by counsel in civil
> litigation.  An attorney may be a zealous advocate on behalf of a
> client, but must always act within the bounds of propriety, ethics
> and professionalism.

*Doc. 12* at 4.  Unfortunately, Mr. Bello chose to disregard Judge Garcia's words of wisdom both
in *Wheeler* and this action.

the referral magistrate judge seem part and parcel of his litigation strategy in the District of New

Mexico.  Plaintiffs' pleadings in this matter are replete with baseless speculation that decisions

against their positions have been decided on something other than the merits of the arguments.

Indeed, in the *Wheeler* case, CIV 04-271 WJ/LFG, virtually identical charges were made against

Magistrate Judge Garcia.  *See Docs. 8, 13, 42, 46 & 52.*  District Judge Johnson found Wheeler's

allegations against Judge Garcia be "totally void of merit."  *See Doc. 42.*  Such groundless

assaults on our judicial officers display obvious but unwarranted hostility and a true lack of

respect for the justice system.

> As the Tenth Circuit noted in a *pro se* case noted,

>> Plaintiff's briefs on appeal do little more than attempt to impugn
>> (without basis) the integrity of the district judge.  Such writings are
>> intolerable, and we will not tolerate them.  "Due to the very nature
>> of the court as an institution, it must and does have an inherent
>> power to impose order, respect, decorum, silence, and compliance
>> with lawful mandates.  This power is organic, without need of a
>> statute or rule for its definition, and it is necessary to the exercise of
>> all other powers."  *United States v. Shaffer Equip. Co.*, 11 F.3d
>> 450, 461 (6th Cir. 1993). . . .  "This court simply will not allow
>> liberal pleading rules and pro se practice to be a vehicle for abusive
>> documents.  Our pro se practice is a shield against the technical
>> requirements of a past age; it is not a sword with which to insult a
>> trial judge."

*Garrett v. Selby,* (10th Cir. September 21, 2005), *quoting Theriault v. Silber*, 579 F.2d 302, 303

(5th Cir. 1978).  Moreover, in the case at bar, the author of the unfounded attacks is not appearing

*pro se.*  Rather, Mr. Bello is a member of the federal bar sworn to serve as an officer of the court

and to abide by the Rules of Professional Conduct adopted by the Supreme Court of the State of

New Mexico and "A Lawyer's Creed of Professionalism of the State Bar of New Mexico."  *See*

D.N.M.LR-Civ. 83.9.  Surely status as a member of the bar cannot immunize an attorney from

condemnation for similar baseless attacks.

# Analysis

**Sanctions for Discovery Violations**

Defendants first seek sanctions for the discovery abuses pursuant to FED. R. CIV. P. 37, and Defendants emphasize Plaintiffs' most recent failures to appear for their timely noticed depositions. *See Doc. 152 & 175.* In light of the numerous, willful discovery violations outlined above, sanctions of some kind are ***clearly*** called for in this case. In *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992), the Tenth Circuit set forth a five-factor test for consideration of the appropriate sanction to be imposed: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would likely be taken as a sanction for non-compliance; and (5) the efficacy of lesser sanctions. *Id.* at 921.

## *(1) The Degree of Actual Prejudice to the Opposing Party*

Although this action was filed on April 12, 2004, the discovery process has been thwarted at every turn. For instance, for the first time in over six years on the bench, the parties were unable to agree on anything for inclusion in the Proposed Discovery Plan or the Initial Pretrial Report. *See Doc. 65* at 7. Due to endless controversies, the court file now consists of over two hundred filed documents, and still Defendants have not received the information necessary to even investigate the facts underlying Plaintiffs' theories for recovery. Plaintiffs maintain that Defendants have caused the delays in bringing this case to a final resolution. Instead, the record demonstrates that it is Plaintiffs' counsel who has unreasonably and vexatiously multiplied the proceedings in this case thereby significantly and needlessly increasing the costs of litigation.

17

### *(2)  The Amount of Interference with the Judicial Process*

The Court has never before seen the degree to which Plaintiffs' counsel obstructed the orderly progression through the discovery phase.  The judiciary has attempted to enlighten Mr. Bello as to a magistrate judge's authority when the district judge properly makes the referral, but he simply refuses to accept that there is no constitutional bar to such referrals.  At every intersection, Plaintiffs have requested a U-turn  – Plaintiffs have filed objections to *every* ruling I have made, and indeed, to every ruling made by the presiding judge.   Thus, for every one step forward, this litigation has taken two steps back.

Plaintiffs' repeated and adamant rejection of rulings of the court have significantly interfered with the orderly progression of this litigation.  Even when a judge's rationale has been set forth with clarity in an effort to educate counsel and the parties, Plaintiffs stubbornly cling to their rejected positions rather than learn from past mistakes.  For instance, Chief Judge Vázquez carefully set out why Plaintiffs' attempted service on Defendant Basmajian Thomas Doyle was ineffective under the rules of civil procedure.  *See Doc. 59.*  Plaintiffs nevertheless asked her to reconsider the "erroneous" decision, *see Doc. 62*, and even sought a writ of mandamus ordering the entry of default against an individual defendant who had not been properly served.  *See Doc. 128* (10th Circuit's April 5, 2005 denial of writ).

At the hearing, I felt Mrs. Drain's frustration when she protested that no one has discussed the merits of the plaintiffs' claims even though this case has been pending for almost a year and a half.  In fact, I share that frustration.  When this case was assigned to Magistrate Judge Leslie C. Smith, he required Plaintiffs to file an amended complaint because the claims and facts as set forth in the original claim were unclear.  *See Doc. 10*.  When Defendants then moved again for a more

definite statement or to dismiss, Judge Smith chose not to delay the litigation any longer.  Instead, he stated:

> Mr. Bello represented to the Court on the record, and defendants may rely thereon, that Paragraphs 6 and 7 contain all of the allegations of fraud.  ***The Court further finds that the defendants may obtain all of the detail in connection therewith through the disclosure and discovery process.***

*Doc. 22* at 1 (emphasis added).  By virtue of Plaintiffs' actions in the disclosure and discovery process, however, Defendants have been denied the opportunity to sufficiently clarify and investigate the claims to get this case on to a trial on the merits.

Looking to all the above instances of Plaintiffs' conduct during discovery, I can say without hesitation that they have substantially interfered with the judicial process to the detriment of not only the parties but the courts.  Judges of both the trial and appellate court have had to expend considerable resources to address the unreasonable actions of Plaintiff's counsel with little success in moving this case through the litigation process.

### (3)  The Culpability of the Litigant

It has become clear that Plaintiffs' failures to comply with the orders of this court and their discovery obligations are not the result of inadvertence or excusable neglect.  Rather, the record establishes a deliberate unwillingness to accept those responsibilities based upon an intransigent belief that the court's reading of rules and laws is erroneous.

As the Drains pointed out at the hearing, they have no legal training and have solely relied on the advice of an attorney who has been empowered by this district to practice before it.  Yet Plaintiffs chose not to provide discovery in the face of warnings from the court that to do so could lead to the loss of their cause of action.  They nevertheless have embraced Mr. Bello as their

agent and must now be held accountable for his actions.  That conscious decision by Plaintiffs underpins the culpability finding against them.[13]

### (4)  *Advance warnings of dismissal of the action as a possible sanction*

Having reviewed the entire case file, the record reflects that both Chief Judge Vázquez and I have repeated cautioned Plaintiffs regarding the potential for imposing sanctions including dismissal.  In an attempt to assure that Mr. Bello's clients were aware of these warnings, both of us have directed that he certify delivery of certain such opinions and orders directly to them.  *See e.g., Docs. 81, 103 & 172.*  I also required that Plaintiffs personally attend the August 11th hearing so that they would be fully aware of the gravity of the situation.  I believe that the court did all it could to caution that dismissal loomed as a possibility if Plaintiffs continued to follow their chosen attorney's advice to comply rule-mandated and court-ordered discovery obligations.

### (5)  *The Efficacy of Lesser Sanctions.*

I am at a loss to see how any lesser sanction than dismissal would deter future discovery abuses.  As counsel for the plaintiff in the *Wheeler* action, Mr. Bello knew that the failure to comply with D.N.M.LR-CIV. 26.3(d) when emotional injury damages are sought could result in the ultimate penalty of dismissal.  Indeed, his client in the *Wheeler* case experienced just that sanction by following Mr. Bello's identical advice on the same issue presented here.  If that experience did not deter similar behavior in this case, how could any lesser sanction be effective to prevent future violations of such discovery obligations?

---

[13]  The tragedy is that Plaintiffs will bear the burden resulting from Mr. Bello's advice if they lose this cause of action and their home.  If their claims here have validity, their only remaining remedy seems to lie in an possible action against him for legal malpractice.

**Sanction Pursuant to FED. R. CIV. P. 11 and 28 U.S.C. § 1927**

Defendants further request monetary and other sanctions against Mr. Bello pursuant to FED. R. CIV. P. 11 and 28 U.S.C. § 1927. His misrepresentations of certification dates and of propositions for which cases stand have created overwhelming confusion for the parties and the court. Admittedly a few inaccurate citations may have been innocent and not intended to mislead the court or opposing parties. However, the pattern of misrepresentations leads me to conclude that the vast majority arose from conscious decisions to misrepresent facts or to incorrectly cite cases for propositions for which they do not stand. *See examples listed in Doc. 117.*

The need to painstakingly review opposing counsel's cited authorities in order to accurately ascertain their holdings undoubtedly increased the amount of time and money required to defend. Likewise the court was forced to expend time and resources to arrive at the truth. Such actions by Mr. Bello have unduly prolonged this litigation and have affected my ability to bring this case to a "just, speedy and inexpensive determination." *See* FED. R. CIV. P. 1.

Undeterred, Mr. Bello protests that Defendants "taunted" his clients when at the hearing defense counsel revealed that the fees incurred in defending this action are well over $100,000. *See Doc. 208* at 4. Yet Plaintiffs have offered nothing to rebut Defendants' need to expend such sums in order to respond to Mr. Bello's litigation methods which have unreasonably multiplied these proceedings. Repeatedly Mr. Bello has made the same arguments which had been previously rejected, cited cases for which they do not stand, personally attacked the defendants, their lawyers, and judges of this district with baseless allegations of bias, conflicts of interest, and lack of judicial restraint and integrity.

Defendants have sought the following sanctions pursuant to FED. R. CIV. P. 11:

> strike Plaintiffs' Answer to the Counterclaim; strike the above-
> mentioned motions and briefs filed by Plaintiffs which impugn the
> integrity of the Court Clerk or counsel for Wells Fargo and
> Fairbanks; strike the briefs and motions which incorrectly state
> existing law; assess monetary sanctions in the amount of $5,000 as
> a penalty to dissuade Plaintiffs or their counsel from such future
> conduct; for Defendants' attorney fees and expenses for preparing
> this motion, a reply if necessary, and for attending the hearing; and
> attorneys fees, costs and expenses incurred as a result of the
> unreasonable and vexatious conduct of Plaintiffs' counsel.

*Doc. 139* at 9-10.  I am not inclined to strike the pleadings as they provide a great deal of the justification for my recommendation for the imposition of severe sanctions.

Clearly potential and actual dismissal of his clients' cases have not deterred Mr. Bello's violations of the rules of discovery.  Apparently Mr. Bello requires needs some other form of incentive to adjust his unacceptable conduct not only as to discovery obligations but the dictates of Rule 11 as well.  I therefore recommend the imposition of monetary sanctions as requested by Defendants to be paid by Mr. Bello to deter similar behavior in the future.

I cannot stress enough that Mr. Bello's personal attacks against the defendants' attorneys and the court lack any basis in fact.  As I read the cold transcript of the most recent hearing, I realize that at times, I could have been more articulate and that some phrases could be misconstrued as insults.  Rather I was trying to just state the situation as it truly was when I stated, "Mr. Bello, you don't understand the rules." *Transcript* at 121.  Likewise, I told Mr. Drain that "your attorney doesn't make sense.  The arguments he makes don't hold water." *Transcript* at 127.  Unfortunately, as can be seen by my comments, the truth sometimes hurts.

Such comments should not be seen as support for Mr. Bello's allegations of judicial bias, however.

Nor do the complained-about judicial comments support recusal. Opinions formed by a judge based on facts introduced or events occurring during legal proceedings ordinarily do not support recusal. . . .   In *Liteky*, the Court stated in pertinent part:

> Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.   A judge's ordinary efforts at courtroom administration-- even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.

*Hall v. Doering*, 185 F.R.D. 639, 642-43 (D. Kan. 1999), *quoting Liteky v. United States*, 510 U.S. at 555-56 (1994).

Finally, the District of New Mexico no longer has a Committee on Admissions and Grievances, and it appears that to be a member of the federal bar association, one need only be a member in good standing of the New Mexico bar.  If after conducting her *de novo* review of these recommendations the presiding judge arrives at the same or similar conclusions, I therefore respectfully ask that she consider forwarding a copy of her ultimate decision to the New Mexico Disciplinary Board for its consideration.

Wherefore,

**IT IS HEREBY RECOMMENDED AS FOLLOWS:**

1.  Plaintiffs' Motion for Stay of All Further Proceedings *(Doc. 214)* be denied as moot;

2.  As to Defendant Fairbanks' motions seeking attorney fees *(Docs. 86 & 87)*, Defendant AHL's motion for order to show cause and contempt *(Doc. 131)*, and Fairbanks' and Wells Fargo's Motion *(Doc. 152)* and AHL's Motion *(Doc. 175)* for Discovery Sanctions be granted,

and that an order be entered dismissing the Drains' lawsuit with prejudice as a sanction pursuant to FED. R. CIV. P. 37 for the discovery violations outlined herein;

   3.  Fairbanks' and Wells Fargo's Motion for Sanctions *(Doc. 117)* pursuant to FED. R. CIV. P. 11 and 28 U.S.C. § 1927 be granted, and that monetary sanctions be imposed against Mr. Bello personally in the amount requested by Defendants in their motion for sanctions; and

   4.  Plaintiffs' Motion to Quash the Subpoenas *(Doc. 150)* be denied as moot.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE